1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NEW SENSATIONS, INC.,

11              Plaintiff,                    No. 2:12-cv-1885-GEB-EFB

12        vs.

13   DOES 1-306, inclusive,                   <u>ORDER</u>

14              Defendants.
     _____/

15

16        Presently before the court is plaintiff's ex parte application for leave to serve third party

17   subpoenas prior to the Rule 26 conference.[1]  Dckt. No. 4.  For the reasons stated herein, the

18   request will be granted in part and denied in part.

19   I.    <u>BACKGROUND</u>

20        Plaintiff, a motion picture production company, has filed this action against defendants

21   Doe 1 through Doe 306, alleging claims for copyright infringement, negligence, contributory

22   copyright infringement, and vicarious copyright infringement.  *See generally* Compl., Dckt. No.

23   1. Plaintiff's complaint alleges that defendants traded (simultaneously uploaded and

24

25        [1] Because plaintiff improperly noticed the motion for hearing before the assigned district
     judge, plaintiff was directed to re-notice the motion for hearing before the undersigned.  *See*
     Dckt. No. 5.  Although plaintiff failed to do so, the undersigned reluctantly issues this order

26   nonetheless.

1

downloaded) one of plaintiff's copyrighted adult entertainment movies ("Dirty Little Schoolgirl Stories #4," the "Motion Picture") through torrent software. *Id*. ¶¶ 8, 10, 13. Plaintiff alleges that, through the use of forensic software, it identified an Internet Protocol ("IP") address associated with each defendant, as well as the date and time of the infringement by defendants. *Id*. ¶¶ 8, 14. Plaintiff further alleges that each of the defendants "has used, and continues to use, an online media distribution system (sometimes referred to as a 'peer to peer' network or a 'P2P' network) to reproduce at least one copy of the Motion Picture, and to distribute to the public, including by making available for distribution to other, copies of the Motion Picture." *Id*. ¶ 15. Plaintiff contends that "[e]ach defendant has acted in cooperation with the other defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of plaintiff's copyrighted Motion Picture, in anticipation of the other defendants doing likewise with respect to that work and/or other works." *Id*. ¶ 16. Plaintiff further alleges that "all of the defendants entered the same BitTorrent swarm, with the same hash, to engage in unlawful reproduction and distribution of plaintiff's copyrighted Motion Picture" and "[e]ach defendant traded the exact same file." *Id*.

Plaintiff alleges that "[e]ach Defendant is known to plaintiff only by the [IP] address assigned by an Internet Service Provider to the Internet account subscribed to and/or used by that defendant on the date and at the time at which the respective infringing . . . was observed." *Id*. ¶ 6. Plaintiff alleges that "information obtained in discovery will lead to the identification of the true names and addresses of defendants and will permit plaintiff to amend [its] complaint to state the same." *Id*. ¶ 7. Plaintiff contends that the defendants were properly joined under Federal Rule of Civil Procedure 20(a)(2) because they engaged in the same series of transactions and occurrences in that they all "traded exactly the same file of the copyrighted work" and "traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software." *Id*. ¶ 8.

////

II.   <u>DISCUSSION</u>

Plaintiff has now filed an ex parte application seeking leave to take expedited discovery prior to the Rule 26 conference in order to obtain the identities of John Does 1 through 306. Dckt. No. 4; *see also* Nicolini Decl., Dckt. No. 4-2.  Specifically, plaintiff seeks to issue subpoenas to the various Internet Service Providers ("ISPs") used by John Does 1 through 306 (each of whom is identified by a unique IP address, which corresponds to the date and time of allegedly infringing activity) directing the ISPs "to produce any and all documents and/or information sufficient to identify the user or users of their respective IP addresses during the corresponding dates and times as listed in Exhibit A attached to the Complaint."  Dckt. No. 4-1 at 1-2.  Plaintiff contends that "[u]nless early discovery is granted, the information that Plaintiff requires to identify Defendants will be permanently lost because ISPs retain such information only for a limited time and will then delete it."  *Id.* at 1.

Plaintiff contends that good cause supports its application for expedited discovery because (1) each Doe defendant is a real person or entity that can be sued in this federal court because each Doe defendant committed copyright infringement in a single transaction that occurred in this district; (2) plaintiff has made a prima facie showing of infringement; (3) there is no other way to identify the Doe defendants; (4) subpoenaing the ISPs will lead to identifying information because plaintiff's discovery requests are reasonably specific, and the ISPs keep a record of subscriber information associated with IP addresses; (5) the ISPs will likely destroy their logs prior to the Rule 26(f) conference; (6) plaintiff has demonstrated a central need for the subpoenaed information to advance the asserted claims; and (7) Doe defendants' expectation of privacy is protected by allowing them 30 days to quash the subpoena.  *Id.* at 3-10.

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  Here, because plaintiff

1  does not know the identity of the Doe defendants, the parties have not yet met and conferred

2  under Rule 26(f).  Therefore, plaintiff requests that the court authorize expedited discovery.

3       Courts in the Ninth Circuit apply a "good cause" test in deciding whether to permit

4  expedited discovery before the Rule 26(f) conference.[2]  *Semitool, Inc. v. Tokyo Electron Am.,*

5  *Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002); *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp.

6  2d 1063, 1066 (C.D. Cal. 2009); *In re Countrywide Financial Corp. Derivative Litig.*, 542 F.

7  Supp. 2d 1160, 1179 (C.D. Cal. 2008); *Matson & Isom Technology Consulting v. Dell Inc.*, 2008

8  WL 3863447 (E.D. Cal. Aug. 19, 2008); *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. 418, 419 (D.

9  Colo. 2003) (The "party seeking expedited discovery in advance of [the] Rule 26(f) conference

10  has the burden of showing good cause for the requested departure from usual discovery

11  procedures.").  "Good cause exists 'where the need for expedited discovery, in consideration of

12  the administration of justice, outweighs the prejudice to the responding party.'"  *In re*

13  *Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1179 (quoting *Semitool, Inc.*, 208

14  F.R.D. at 276).  The court must make this evaluation in light of "the entirety of the record . . .

15  and [examine] the reasonableness of the request in light of all the surrounding circumstances."

16  *Semitool, Inc.*, 208 F.R.D. at 275 (citation & quotation marks omitted) (emphasis removed); *Am.*

17  *Legalnet, Inc.*, 673 F. Supp. 2d at 1067.

18       Good cause for expedited discovery is frequently found in cases involving claims of

19  infringement and unfair competition or in cases where the plaintiff seeks a preliminary

20  injunction.  *Semitool, Inc.*, 208 F.R.D. at 276; *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd.*

21  *Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002).  Recently, several courts have found good

22  cause to allow expedited discovery to ascertain the identities of Doe defendants in copyright

23

24  [2] "Courts are split as to whether a party seeking expedited discovery must satisfy a 'good cause' or 'reasonableness' standard or the more stringent standard set forth in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which largely tracks the standard required for obtaining a

25  preliminary injunction."  *See Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc.*, 2003 WL 23350128, at *1 n.7 (W.D.N.Y. Dec. 5, 2003) (detailing the split).  However,

26  courts in the Ninth Circuit have traditionally applied the "good cause" standard.

1    infringement actions.  *See, e.g., Arista Records LLC v. Does 1-43*, 2007 WL 4538697, at *1

2    (S.D. Cal. Dec. 20, 2007); *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620 (N.D. Cal.

3    Nov. 30, 2011) (authorizing expedited discovery as to one of the Doe defendants and dismissing

4    the remaining Doe defendants); *Hard Drive Prods., Inc. v. Does 1-130*, 2011 WL 5573960 (N.D.

5    Cal. Nov. 16, 2011) (same); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July

6    20, 2011) (same); *Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 2690142 (N.D. Cal. July 8,

7    2011) (same); *AF Holdings LLC v. Does 1-96*, 2011 WL 5864174 (N.D. Cal. Nov. 22, 2011)

8    (authorizing expedited discovery as to the 96 Doe defendants).

9         For example, in *Arista Records LLC*, the plaintiffs alleged that unidentified defendants

10   had used an online media distribution system to download and distribute plaintiffs' copyrighted

11   works to the public without permission.  *Arista Records LLC*, 2007 WL 4538697, at *1.

12   Because the plaintiffs were only able to identify each defendant by a unique internet protocol

13   address assigned to that defendant, plaintiffs filed an ex parte application seeking leave to serve

14   immediate discovery on a third-party ISP to identify the Doe defendants' true identities.  *Id*.  The

15   court found good cause to allow expedited discovery based on the plaintiffs' prima facie

16   showing of infringement, the risk that the ISP would not long preserve the information sought,

17   the narrow tailoring of the requests to the minimum amount of information needed to identify the

18   defendants without prejudicing their rights, and the fact that the expedited discovery would

19   substantially contribute to moving the case forward.  *Id*.  The court further noted that, without

20   such discovery, plaintiffs could not identify the Doe defendants and would not be able to pursue

21   their lawsuit to protect their copyrighted works from infringement.  *Id*.

22        Other courts have specifically noted that "[i]n this particular context, the court must

23   balance 'the need to provide injured parties with an [sic] forum in which they may seek redress

24   for grievances' against 'the legitimate and valuable right to participate in online forums

25   anonymously or pseudonymously . . . without fear that someone who wishes to harass or

26   embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to

discover their identity.'" *Hard Drive Prods., Inc.*, 2011 WL 5573960, at *1 (quoting *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999)); *see also Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) (stating that "the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net)").[3]

////

---

[3] Nothing in the record presently supports that plaintiff is using the court to "pursue an extrajudicial business plan," but the court notes some growing concern among district courts about these sorts of expedited discovery matters. For example, a judge in the Central District of California recently granted plaintiff's motion for expedited discovery and permitted expedited discovery as to one Doe defendant, but severed the remaining nine defendants from the case and concluded his order with the following:

### C. The economics of pornographic copyright lawsuits

The Court is familiar with lawsuits like this one. [Citations omitted.] These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

*Malibu Media, LLC v. John Does 1 through 10*, 2012 U.S. Dist. LEXIS 89286, at *8-9 (C.D. Cal. June 27, 2012); *see also Malibu Media, LLC v. Does 1-5*, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) (permitting limited discovery but stating that the court "shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded.") (citing, among other authorities, *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012)).

1    Here, plaintiff has demonstrated good cause for some of the expedited discovery

2    requested, but not all of it.  Specifically, plaintiff has shown good cause to conduct expedited

3    discovery regarding the identity of one of the Doe defendants, John Doe 1, but has not shown

4    good cause to conduct expedited discovery regarding the other Doe defendants.  Since plaintiff

5    does not know the identity of any of the Doe defendants, plaintiff cannot proceed with this

6    lawsuit, and therefore cannot conduct a Rule 26(f) discovery conference, without obtaining at

7    least one Doe defendant's identity.  *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597, at *1

8    (N.D. Cal. Apr. 19, 2006).  Additionally, plaintiff's representations presently support that the IP

9    address identified by plaintiff for John Doe 1 – 107.39.125.80 – is associated with a particular

10   individual, and that the discovery sought will facilitate identification of, and service of the

11   summons and complaint on, that Doe defendant.  *See* Dckt. No. 1 at 12.  Further, plaintiff's

12   Chief Technology Officer has declared that some ISPs store subscriber information associated

13   with particular IP addresses for a limited period of time.[4]  Nicolini Decl. ¶ 37.  Finally, the

14   undersigned also finds, at least on the present record, that there is little risk of material prejudice

15   to John Doe 1 or the associated ISP, Sprint PCS, if that ISP is served with a Rule 45 subpoena

16   that requires the ISP to provide the actual name and contact information of John Doe 1,

17   especially since John Doe 1 and/or the ISP may move to quash the subpoena or seek a protective

18   order.  Accordingly, plaintiff's request to subpoena Sprint PCS (the ISP listed for John Doe 1 in

19   Exhibit A to plaintiff's complaint) to obtain limited information needed to identify the user of IP

20   address 107.39.125.80 will be granted.

21   However, because plaintiff will be able to proceed with this action and with traditional

22   discovery once it obtains information identifying John Doe 1, plaintiff has not shown that the

23   ────────────────────

24   [4] The declaration of plaintiff's Chief Technology Officer states: "ISPs retain their logs for
only a limited time.  Based on my hands-on experience in working with ISPs, such information
is retained for only six months or less on average.  Thus, such information must be requested
25   expeditiously and the ISPs must be instructed to retain such information for this litigation."
Nicolini Decl. ¶ 37.  Because Nicolini's statement is unsupported by any documentation and is
26   so general in nature, it is of minimal value.

1    need to discover the identities of all of the other doe defendants at this early stage outweighs the

2    prejudice to the responding ISPs and/or to those potentially innocent Doe defendants, or that the

3    request to subpoena all of those individuals' ISPs is reasonable or supported by good cause, in

4    light of all the surrounding circumstances.

5          Here, plaintiff will be given authority to issue a subpoena to John Doe 1's ISP.  Once that

6    ISP responds to the subpoena, plaintiff will presumably be able to identify John Doe 1, serve

7    process, and proceed with this action (including regularly scheduled discovery).  Therefore,

8    because plaintiff does not need expedited discovery regarding the other Doe defendants in order

9    to proceed with this case, that "need" does not outweigh the prejudice to the ISPs, which would

10   necessarily incur some burden (albeit minimal) in responding to the subpoenas.  Additionally,

11   although there is some risk that the ISPs used by the other Doe defendants could destroy

12   information regarding the identities of those Doe defendants, plaintiff has not demonstrated that

13   the risk of such destruction before a Rule 26(f) conference could occur is significant.

14         Further, although plaintiff argues that the need for the requested discovery outweighs the

15   other Doe defendants' expectations of privacy, the court disagrees, especially given the potential

16   innocence of those Doe defendants.  As many courts have noted, "the ISP subscriber to whom a

17   certain IP address was assigned may not be the same person who used the Internet connection for

18   illicit purposes."  *SBO Pictures, Inc.*, 2011 WL 6002620, at *3; *Pac. Century Int'l Ltd.*, 2011

19   WL 5117424, at *2; *IO Group, Inc. v. Does 1–19*, 2011 WL 772909, at *1 (N.D. Cal. Mar. 1,

20   2011).  "For example, '[ISP] subscriber John Doe 1 could be an innocent parent whose internet

21   access was abused by her minor child, while John Doe 2 might share a computer with a

22   roommate who infringed Plaintiff's works.'"  *SBO Pictures, Inc.*, 2011 WL 6002620, at *3

23   (quoting *Third Degree Films v. Does 1–3577*, 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011)).

24   Because plaintiff seeks information about the "ISP subscribers who were assigned certain IP

25   addresses, instead of the actual Internet users who allegedly engaged in infringing activity,

26   'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into

1    the litigation, placing a burden upon them that weighs against allowing the discovery as

2    designed.'" *Id.* (quoting *Hard Drive Prods.,* 2011 WL 5573960, at *2).  Additionally, as

3    numerous other courts have noted, if the undersigned were to grant plaintiff's request for

4    expedited discovery regarding all of the Doe defendants, "[p]laintiff would likely send

5    settlement demands to the individuals whom the ISP identified as the IP subscriber.  'That

6    individual—whether guilty of copyright infringement or not– would then have to decide whether

7    to pay money to retain legal assistance to fight the claim that he or she illegally downloaded

8    sexually explicit materials, or pay the money demanded.  This creates great potential for a

9    coercive and unjust 'settlement.'"[5]  *SBO Pictures, Inc.*, 2011 WL 6002620, at *3 (quoting *Hard*

10   *Drive Prods.,* 2011 WL 5573960, at *3).

11        Therefore, the court finds that plaintiff's request for expedited discovery regarding the

12   identities of John Does 2 through 306 is not supported by good cause.  Accordingly, plaintiff's

13   request to conduct that expedited discovery will be denied without prejudice.

14   III.    CONCLUSION

15        Accordingly, IT IS HEREBY ORDERED that:

16        1.  Plaintiff's ex parte application for leave to take expedited discovery, Dckt. No. 4, is

17   granted in part and denied in part.

18        2.  Plaintiff may immediately serve a Rule 45 subpoena on Sprint PCS (the ISP listed for

19   the first John Doe in Exhibit A to plaintiff's complaint) to obtain the following information

20

---

21        [5] Also, by limiting expedited discovery to John Doe 1, the court avoids prematurely
     ruling on the question of improper joinder, which appears endemic to BitTorrent file sharing

22   cases such as this one.  *See, e.g., OpenMind Solutions, Inc. v. Does 1-39*, 2011 WL 3740714, at
     *4-5 (N.D. Cal. Aug. 23, 2011) (granting early discovery as to one Doe defendant but dismissing

23   all but one of the 39 Doe defendants from the action without prejudice for improper joinder);
     *Diabolic Video Prods., Inc.*, 2011 WL 3100404, at *3-5 (N.D. Cal. May 31, 2011) (granting

24   early discovery as to one Doe defendant but severing all but one of the 2,099 Doe defendants
     from the action for improper joinder); *see also On The Cheap, LLC v. Does 1-5011*, 280 F.R.D.

25   500, 503 (N.D. Cal. Sept. 6, 2011) (dismissing 5,010 defendants without prejudice for improper
     joinder after expedited discovery was permitted and conducted).  The undersigned notes that an

26   ultimate determination regarding the propriety of joinder is beyond the limited jurisdiction of the
     magistrate judges of this court.  *See* E.D. Cal. L.R. 302(c).

1   about John Doe (based on the IP address listed for him/her – 107.39.125.80):  name, address,

2   telephone number, and email address.[6]  A copy of this order shall be attached to the subpoena.

3        3.  The ISP will have thirty (30) days from the date a copy of this Order and a copy of the

4   subpoena are served upon it to serve John Doe 1 with a copy of the subpoena and a copy of this

5   order.  The ISP may serve John Doe 1 using any reasonable means, including written notice sent

6   to John Doe's last known address, transmitted either by first-class mail or via overnight service.

7   The ISP and John Doe 1 each shall have 30 days from the date of service to file any motions in

8   this court contesting the subpoena (including a motion to quash or modify the subpoena).  If that

9   30-day period lapses without John Doe 1 or the ISP contesting the subpoena, the ISP shall have

10  14 days to produce to plaintiff the information responsive to the subpoena with respect to John

11  Doe 1.

12        4.  The ISP shall confer with plaintiff before assessing any charge in advance of

13  providing the information requested in the subpoena.  If the ISP elects to charge for the costs of

14  production, the ISP shall provide plaintiff with a billing summary and cost reports.

15        5.  The ISP shall preserve all subpoenaed information pending the ISP's delivery of such

16  information to plaintiff or the final resolution of a timely filed and granted motion to quash

17  the subpoena with respect to such information.

18        6.  Any information disclosed to plaintiff in response to the subpoena may not be used for

19  any improper purpose and may only be used for protecting its rights as set forth in the

20  complaint.

21  ////

22  ////

23  ////

24  ───────────────

25  [6] Plaintiff has not made an adequate showing as to why it needs to discover the Media Access Control number associated with John Doe 1 on an expedited basis.  Plaintiff should be able to serve the summons and complaint on John Doe 1 without acquiring the Media Access

26  Control number.

7.  Plaintiff's request for an order authorizing plaintiff to serve subpoenas on other ISPs is denied without prejudice.

SO ORDERED.

DATED:  October 17, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11